IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYLER S. HARRISON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-01879-JMG |
| | : | |
| THE CITY OF LANCASTER, *et al.,* | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                       March 29, 2021

      During an assault by an unknown assailant in a parking garage, Plaintiff Tyler S. Harrison fell from an upper level of the garage and sustained serious injuries. He now brings federal and state law claims against the owners of the parking garage—Defendants Lancaster Parking Authority and the City of Lancaster—for not maintaining a safe environment. Presently before the Court are the defendants' motions to dismiss the amended complaint for failure to state a claim. For the reasons set forth below, the Court will dismiss the federal claims with prejudice and decline to exercise jurisdiction over the remaining state law claims.

**I.    FACTUAL ALLEGATIONS[1]**

      Harrison spent the night of February 10, 2019, out with some of his friends in Lancaster, Pennsylvania. *See* ECF No. 10-2, ¶ 13 (first amended complaint). At the end of the evening, when they were ready to head home, the group returned to the Penn Square Parking Garage to

---

[1] The following summary is based on the factual allegations contained in the amended complaint. For purposes of deciding this motion, the allegations are presumed to be true and are considered in the light most favorable to the plaintiff.

retrieve their car. *See id.* Inside the parking garage, an unknown person, or perhaps persons,[2] approached Harrison and "brutally attacked" him. *Id.* ¶ 15. At some point during the assault, Harrison was thrown or pushed, with "great force," from an upper level of the garage. *Id.* He landed on the sidewalk below and sustained severe, life-altering injuries. *Id.* ¶¶ 15–16.

In the present action, Harrison has brought claims of negligence and section 1983 liability against the two entities that own garage—Defendant Lancaster Parking Authority (the "Parking Authority") and Defendant the City of Lancaster ("the City of Lancaster"). ECF No. 10-2 ¶¶ 2–5, 23–154. Both defendants have moved to dismiss the federal and state law claims against them.[3] *See* ECF Nos. 10, 12.

## II.  STANDARD OF REVIEW

A complaint may be dismissed for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain factual allegations that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Facial plausibility means that when accepting the complaint's factual allegations as true and in the light most favorable to the plaintiff, a "reasonable inference" may be drawn that "the defendant is liable for the misconduct alleged." *See id.*

At the motion to dismiss stage, the issue is not whether the plaintiff will prevail in the end but whether the complaint rises to the level that is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The Third Circuit has set forth a three-step framework for determining the sufficiency of a complaint. *Santiago v. Warminster Twp.*,

---

[2] The City of Lancaster avers that the unknown assailant is Ryan Scott Seals and has filed a third-party complaint against him. *See* ECF No. 26.

[3] The Court heard oral argument on the motions to dismiss on June 23, 2020. ECF No. 30 (minute entry for hearing).

629 F.3d 121, 130 (3d Cir. 2010). First, the court should take "note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). Second, the court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79); *see also Iqbal* 556 U.S. at 678 (explaining that courts need not accept as true legal conclusions or conclusory statements unsupported by the facts). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 678–79).[4] A court must "draw on its judicial experience and common sense" to make this context-specific determination. *Iqbal*, 556 U.S. at 686.

### III. DISCUSSION

The defendants contend that the amended complaint lacks sufficient factual allegations to sustain any claim against them. *See* ECF Nos. 10, 12. After careful review, the Court agrees that the section 1983 claims must be dismissed. Since those are the only federal claims presented, the Court will decline to exercise supplemental jurisdiction over the state law negligence claims and therefore dismiss the entire action.

#### A. Section 1983 Claims

Harrison alleges that the defendants are liable under 42 U.S.C. § 1983 for violating his constitutional right to bodily integrity by acting deliberately indifferent to the dangers in the parking garage. ECF No. 10-2, ¶¶ 60–117; *see also* ECF No. 17-1, at 22–23; ECF No. 18-1, at 21–22. In particular, he points to the garage's low height of the barrier walls, lack of warning

---

[4] When deciding a motion to dismiss, courts generally can only consider the allegations contained in the complaint, any attached exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

3

signs, dim lights, and inadequate security personnel and protocols. ECF No. 10-2, ¶¶ 60–117; *see also* ECF No. 17-1, at 22–23; ECF No. 18-1, at 21–22.

To successfully assert a section 1983 claim, a plaintiff must show "a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). Municipal entities may be held liable if the plaintiff is able to establish a causal connection between the constitutional deprivation and an identifiable policy or practice of the municipality. *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). As such, the threshold inquiry is "whether the plaintiff has sufficiently alleged a deprivation of a constitutional right." *Rivas v. City of Passaic*, 365 F.3d 181,193–94 (3d Cir. 2004).[5]

Harrison invokes the Fourteenth Amendment's protection of an individual's right to bodily integrity. ECF No. 17, at 21; ECF No. 18, at 21; *see also* U.S. CONST. amend. XIV, § 1 ("No state shall . . . deprive any person of life, liberty or property, without due process of law."). "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Rather, its purpose was to protect individuals from state, not private, harm. *Id.* at 196. Therefore, as a general rule, the state's "failure to protect an individual against private violence simply does not constitute a [Fourteenth Amendment] violation." *Id.* at 197; *see also Sanford v. Stiles*, 456 F.3d 298, 303–04

---

[5] *See also Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) (affirming lower court's dismissal of *Monell* claim against school district defendant because plaintiff failed to demonstrate that there was an underlying constitutional violation).

4

(3d Cir. 2006) ("Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals.").

There are two recognized exceptions to this general rule: the "special relationship" exception, and the "state-created danger" exception.[6] *Sanford*, 456 F.3d at 304. The special relationship exception applies in cases where the state takes an individual into custody, thereby placing an affirmative duty to protect on the state. *See Gremo v. Karlin*, 363 F. Supp. 2d 771, 782 (E.D. Pa. 2005). Given that Harrison has not alleged that he was taken into custody by either defendant, this exception is not applicable.

Instead, Harrison relies on the state-created danger exception. *See* ECF No. 17-1, at 23; ECF No. 18-1, at 22. Under this exception, section 1983 liability is permitted where (1) "the harm ultimately caused was foreseeable and fairly direct"; (2) "a state actor acted with a degree of culpability that shocks the conscience"; (3) "a relationship existed between the state and the plaintiff"; and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006); *see also Johnson*, 975 F.3d at 400.

Although the defendants challenge every element of the claim, the Court need only focus on the third requirement: whether a relationship existed between the parties. To satisfy this requirement, the relationship between the state and the plaintiff must be "sufficiently close to exclude those instances where the state actor creates only a threat to the general population."

---

[6] Interpreting the Supreme Court's comment in the *Deshaney* opinion that the state "played no part" in creating the dangers to the plaintiff, the Third Circuit, along with other lower courts, adopted the state-created danger theory of liability. *Johnson*, 975 F.3d at 398–400 (describing the evolution of the state-created danger doctrine). To this day, the Supreme Court has not explicitly recognized the exception. *Id.* at 399–400. Nevertheless, it remains binding precedent in this circuit. *Id.*

5

*Rivas*, 365 F.3d at 197 (internal quotation mark omitted) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 913 (3d Cir. 1997)). Otherwise, the scope of the state-created danger exception would be expanded "beyond its useful and intended limits." *Morse*, 132 F.3d at 913 n.12. At the same time, the relationship requirement is not intended to be "so restrictive as to limit the scope of § 1983 to those instances where a specific individual is placed in danger." *Rivas*, 365 F.3d at 197 (internal quotation mark omitted) (quoting *Morse*, 132 F.3d at 913). The proper standard falls somewhere in the middle—the plaintiff must be a "foreseeable victim," either individually or as "a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Phillips*, 515 F.3d at 242.

Applying this framework, and viewing all the facts in the light most favorable to Harrison, the Court concludes that he was not a member of a discrete class of foreseeable victims. Harrison attempts to distinguish himself from the general public by characterizing the discrete class as "business invitee[s]" of the parking garage. *See* ECF No. 17-1, at 24; ECF No. 18-1, at 23. Such a relationship is, unfortunately, not sufficiently close to proceed with a state-created danger claim. The parking garage's business invitees, covering an indefinite period of time, are too large of a group to be considered a "discrete class" and whose members are essentially indistinguishable from the general public.

The Court finds guidance in the decisions from other district courts who have rejected the proposition that public transit passengers form a discrete class "by virtue of being in a customer and servicer relationship with [the transportation authority]." *Crockett v. Se. Pa. Transp. Ass'n*, No. 12-4230, 2013 WL 2983117, at *7 (E.D. Pa. June 14, 2013) (Baylson, J.) (internal quotation marks omitted). While the specific facts of those cases are certainly different than those at issue here, the reasoning underscoring the decisions is persuasive.

For example, in *Crockett*, the plaintiff had been seriously injured when he exited a SEPTA train car. *Id.* at *1. The source of his injury was an allegedly known hazard that SEPTA not only failed to fix, but also stopped inspecting on a daily basis. *Id.* at *1–2. The court granted SEPTA's motion to dismiss the state-created danger claim, in part, because the plaintiff was not a member of a discrete class of foreseeable victims. *Id.* at *2, 6–8. In doing so, the court endorsed the "sound" rule that public transit passengers are "too vast in size to constitute a discrete class, particularly to non-immediate threats." *Id.* at *7 ("SEPTA passengers, as with car passengers on a highway, are an 'unquantifiable and virtually unidentifiable mass of potential plaintiffs' that are indistinguishable from the general population at large." (quoting *Solum v. Yerusalim*, No. 98-4056, 1999 WL 395720, at *5 (E.D. Pa. June 17, 2009))). Similarly, here, the parking garage's business invitees are "too vast in size" to be a discrete class of foreseeable victims.

In comparison, the Third Circuit has found plaintiffs to be a member of discrete class of foreseeable victims in cases where there is a much closer connection between the state and the plaintiff. *See, e.g.*, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (finding high school student athletes to be a discrete class of foreseeable victims of the team's coaching staff); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247 (3d Cir. 2016) (finding kindergarten student to be a foreseeable victim of teacher's failure to follow school district's release policy that had been instituted to benefit discrete class of kindergarten children); *see also Hopkins v. Yesser*, 412 F. Supp. 3d 517, 525 (E.D. Pa. 2019) (collecting cases) ("The classes that the Third Circuit has recognized as sufficiently 'discrete' consistently feature clearly defined outer limits or membership criteria.").

Unable to show that he was a foreseeable victim of the defendants' actions, Harrison has not sufficiently alleged a constitutional deprivation under the state-created danger theory. Accordingly, his section 1983 claims must be dismissed.[7]

### B. Negligence Claims

The remaining counts in Harrison's amended complaint assert various state law negligence claims against both defendants. Having dismissed all the claims over which it has original jurisdiction, a district court has the discretion to exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). Where, such as here, the federal claims are dismissed before trial, the district court must decline to extend supplemental jurisdiction unless considerations of judicial economy, convenience, and fairness require the court to hear the state law claims. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). None of these extenuating circumstances are present in this case, and therefore an extension of supplemental jurisdiction over the negligence claims is unwarranted.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the section 1983 claims are dismissed with prejudice. In addition, the Court declines to exercise supplemental jurisdiction over the remaining negligence

---

[7] After a claim has been dismissed pursuant to Rule 12(b)(6), district courts generally must allow the plaintiff an opportunity to amend the complaint to cure the deficiencies. *See Phillips*, 515 F. 3d at 245. However, if the court determines that "such an amendment would be inequitable or futile," then leave to amend need not be granted. *See id.* Because any amendment to the section 1983 claims would be futile, the claims will be dismissed with prejudice and without leave to amend.

claims. Therefore, those claims are dismissed without prejudice. An appropriate order will follow.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge